```
               UNITED STATES DISTRICT COURT
               EASTERN DISTRICT OF LOUISIANA
```

**TIMOTHY LEJEUNE**                                  **CIVIL ACTION**

**VERSUS**                                           **NO. 11-2482**

                                                     **SECTION B (5)**

**PRODUCTION SERVICES NETWORK
U.S., INC., BP AMERICA INC., BP
PRODUCTS NORTH AMERICA, INC.,
INTEGRATED PROJECT SERVICES LLC,
BALES ENVIRONMENTAL LLC, JOE
CATALANOTTO, O'BRIEN'S, FLORIDA
MARINE LLC, AND CHILL BOATS LLC**

## ORDER AND REASONS

For the reasons enumerated below, **IT IS ORDERED** that BP's opposed Motion for Summary Judgment is **GRANTED**.[1]

Cause of Action and Facts of Case

This case arises out of events stemming from the 2010 BP oil spill cleanup. Plaintiff, Timothy Lejeune, brings this suit under the Jones Act 46 U.S.C.A. § 688 (currently codified at 46 U.S.C.A. § 30104). This Court has jurisdiction under Admiralty and General Maritime Law. 28 U.S.C.A. § 1333.

Lejeune was injured aboard a vessel transporting him from a barge to shore. He claims he was injured due to a crewmember's negligence or the vessel's unseaworthiness.[2] Lejeune filed suit, naming as Defendants Production

---
[1]See Rec. Doc. No. 96, 99, 101, 119.
[2]Rec. Doc. No. 123, p. 6.

1

Services Network U.S., Inc. ("PSN"), BP America Inc. and BP Products North America, Inc. ("BP"), Chill Boats LLC. ("Chill Boats"), Integrated Pro Services LLC ("IPS"), Joe Catalanotto, Bales Environmental Consulting & Management LLC ("Bales Environmental"), Florida Marine LLC ("Florida Marine"), and O'Brien's Response Management LLC ("O'Brien's"). Lejeune seeks recovery for past lost wages, future earning capacity, and past and future: pain and suffering, mental and emotional distress, and loss of enjoyment of life.[3]

Lejeune worked for a PSN subsidiary as a paramedic aboard a barge called the DECON-1.[4] On the date of the accident Lejeune asked the DECON-1 supervisor, Brandon Tune, that he, Lejeune, be transported from the barge back to shore. Tune was employed by Bales Environmental and was subcontracted to O'Brien's. Tune eventually granted Lejeune's request late in the evening on October 4, 2010. Tune assigned the task to transport Lejeune to Brennan Sheldon, the boat captain of the Hydra-Sport 30 (also referred to as the "Fastboat" or "Mr. Scotty").[5] The Hydra-Sport was chartered and operated by Chill Boats, who also employed Sheldon, though Sheldon took all his day-to-day

---

[3]*Id.* at p. 8.
[4]*Id.* at p. 3.
[5]Rec. Doc. 76-1 p. 1.

2

orders from Tune.[6] Sheldon alleges he protested Tune's order to transport Lejeune that evening because it was pitch dark and the winds made the water conditions particularly rough.[7] Nevertheless, Sheldon felt the trip could be made, and complied with Tune's order to complete the transport.

Sheldon boarded the Hydra-Sport with his deckhand and Lejeune. Sheldon directed Lejeune to sit in the collapsible chair found at the back of the boat. Sheldon elected to navigate without the use of lights and relied on radar and other electronic equipment to guide him. The Hydra-Sport hit a wake and the impact allegedly threw Lejeune from his seat, resulting in injuries to his neck and shoulder.[8] (The manner in which Lejeune fell and the extent of his injuries are disputed.) The Hydra-Sport completed the trip to shore and left Lejeune. Lejeune carried his own bags off the Hydra-Sport and did not disclose his injuries to the boat's crewmembers.

Analysis

In cases where a motion for summary judgment is filed preceding a bench trial, as is the case here, the presiding judge "has the limited discretion to decide that the same evidence, presented to him or her as trier of fact in a

---

[6] Id. at p. 2 (citing Earl John Adams Dep. 7:1-8:6).
[7] Brennan Sheldon Dep. 14:6-25, Oct. 24, 2013.
[8] *Id*. at 16:7-15.

3

plenary trial, could not possibly lead to a different result." *U.S. Fid. & Guar. Co. v. Planters Bank & Trust Co.*, 77 F.3d 863, 866 (5th Cir. 1996).

The Court finds no genuine issue of material fact as to BP's involvement in the instant controversy. Accordingly, summary judgment must be granted. BP cannot be held liable for crewmember negligence or vessel unseaworthiness because there is no evidence BP had control or responsibility over the crewmembers or vessels in question. While Chill Boats and Lejeune allege "the very complexity" of the cleanup operations create a genuine issue of material fact, the Court rejects this theory as outcome-determinative. The record contains no evidence that BP had control or responsibility over the crewmembers or that BP owned or controlled any of the vessels involved.

Since BP as movant has met its burden, the nonmoving party "must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citing *Celotex*, 477 U.S. at 325). Because Chill Boats and Plaintiff have failed to meet that burden with regard to BP, judgment as a matter of law is appropriate.

**A. Issue 1 – Crewmember Negligence**

    **a. Vicarious Liability Under Respondeat Superior**

When analyzing maritime tort cases, federal courts rely on general principles of negligence law. *Canal Barge Co., Inc. v. Torco Oil Co.*, 220 F.3d 370, 376 (5th Cir. 2000). "The elements of a maritime negligence cause of action are essentially the same as land-based negligence under the common law." *Withhart v. Otto Candies, L.L.C.*, 431 F.3d 840, 842 (5th Cir. 2005). One common law principle that still carries great weight under the Jones Act is that an employer can be vicariously liable for its employee's tortious conduct through the doctrine of respondeat superior. *Beech v. Hercules Drilling Co., L.L.C.*, 691 F.3d 566, 571 (5th Cir. 2012). Meaning, an employer's liability only extends to its employee's tortious conduct that occurs within the course and scope of employment. *Id.* at 571 (referencing *Landry v. Oceanic Contractors, Inc.*, 731 F.2d 299, 303 (5th Cir. 1984)). It must first be established that the principal is an employer of the employee tortfeasor under the Jones Act. *Cosmopolitan Shipping Co. v. McAllister*, 337 U.S. 783, 790 (1949) The "right" to control is the essence of the employer-employee relationship, the primary factors that define an employer's right to control are: selection and engagement; payment of

5

wages; power of dismissal; and power of supervision and control. *Corsair v. Stapp Towing Co., Inc.*, 228 F. Supp. 2d 795, 798 (S.D. Tex. 2002). Control centers around the amount of control "exercised over the details of the work." *Id.* at 798. Importantly, no one factor is dispositive, the "venture as a whole" must be considered. *Cosmopolitan Shipping Co.*, 337 U.S. at 795. Once the relationship is established, vicarious liability may apply to employees working for their employer in the scope of their employment. *See* 46 U.S.C.A. § 30104.

BP cannot be held liable for vicarious liability under the respondeat superior theory because the evidence does not indicate BP employed any of the individuals involved in Lejeune's accident. BP did not have the "right" to control Michael Bales, Tune, or Sheldon. Michael Bales was employed by Bales Environmental; he was contracted to and paid by O'Brien's.[9] Bales Environmental paid Tune and was his employer; Bales Environmental then subcontracted Tune to O'Brien's.[10] Tune stated he could be terminated by either Bales Environmental or O'Brien's.[11] Sheldon and his deckhand were Chill Boats employees, who were subcontracted to IPS and Florida Marine. BP did not directly pay any of the

---

[9]Michael Bales Dep. 63:10-17, Oct. 28, 2013.
[10]Bales Dep. 73:14-17.
[11]Brandon Tune Dep. 29:6-13, June 10, 2014.

6

aforementioned individuals. BP did not participate in their hiring, and no deposition testimony states BP had the right to terminate any of the crewmembers.[12]

Sheldon stated that he "figured" he worked for BP, but that belief alone is not sufficient to hold BP as his employer.[13] The unclear relationships between parties may have led to Sheldon's belief. Occasionally he transported individuals to the DECON-1 that, according to him, "most likely" worked for BP.[14] His belief is not sufficient evidence to assign liability to BP when applying summary judgment standards. The Court may not consider record statements not within a declarant's personal knowledge. *See McFaul v. Valenzuela*, 684 F.3d 564, 580 (5th Cir. 2012). Affidavits and other summary judgment evidence must be "based on personal knowledge and not based on information and belief." *Bolen v. Dengel*, 340 F.3d 300, 313 (5th Cir. 2003); *see also Richardson v. Oldham*, 12 F.3d 1373, 1378 (5th Cir. 1994) (holding statements based on belief fail the requirements of Fed. R. Civ. P. 56(e)).

---

[12] In addition to the exhibits submitted in connection with BP's Motion for Summary Judgment, the Court has considered the depositions attached to Chill Boats' Motion for Summary Judgment (Rec. Doc. No. 153). The depositions do not proffer new evidence that BP employed or controlled the individuals in question. In fact, the latest evidence confirms the Court's contention that BP's Motion to Dismiss should be granted.
[13] Rec. Doc. No. 110-2, p. 11.
[14] Sheldon Dep. 40:2-6.

Sheldon's statements regarding his employment status with BP are not based on his personal knowledge. He states "[t]hey had BP people, from my understanding, coming over here checking on the barges."[15] He believed he worked for BP solely on the basis that BP personnel were around. His statement draws on his understanding and belief, and not his personal knowledge. This is similar to the defendant in *Bolen,* who commented, "to the best of [his] recollection," that a document was timely signed. *Bolen*, 340 F.3d at 313. Like in *Bolen*, Sheldon's statement expressly came "from [his] understanding."

Tune states BP representatives would be on the DECON-1 "maybe once a month;" Tune had "very little" interaction with them, and received no directions from them.[16] In short, neither Sheldon nor Tune can provide specific facts within their personal knowledge that BP was responsible for or had a right to control any individual involved in the instant suit.

Chill Boats' argument might be persuasive if Sheldon stated he *actually worked* for BP rather than he *believed* he worked for BP. Even then, Sheldon's statements would have to demonstrate BP's capacity to hire, terminate, pay or

---

[15]Sheldon Dep. 40:2-23.
[16]Tune Dep. 64:23-65:16.

8

control the method and means by which the individual performed the work tasks. *See Corsiar*, 228 F.Supp.2d at 798. Chill Boats and Lejeune provide no such evidence. And, the evidence that is presented fails summary judgment standards, as it relies on belief. *See, e.g.*, *Bolen*, 340 F.3d at 313.

### b. Vicarious Liability Under the Borrowed Servant Doctrine

Alternatively, Chill Boats argues BP had ultimate authority over the DECON-1, and thus BP had control over Tune and Sheldon, making them BP's "borrowed servants."[17] There is no fixed test to determine borrowed servants; generally the issue revolves around who had control over the employee. *Ruiz v. Shell Oil Co.*, 413 F.2d 310, 313 (5th Cir. 1969). An employee of a general employer may become a borrowed servant of another and "[r]espondeat superior liability is assigned to the borrowing employer who had control over the act in question." *Starnes v. United States*, 139 F.3d 540, 542 (5th Cir. 1998). Although the right to control is not dispositive, it is the central issue to determining borrowed employee status. *See Ruiz*, 413 F.2d at 313 (citing *Standard Oil Co. v. Anderson*, 212 U.S. 215, 222 (1909)). If the control analysis is

---

[17] Rec. Doc. No. 99, p. 6

unhelpful, other supporting factors may be considered.[18] *Id.* at 313; *Brown v. Union Oil Co. of Ca.*, 984 F.2d 674, 676 (5th Cir. 1993).

Beginning with the control analysis, the deposition testimony shows BP did not have the right to control over Tune or Sheldon. The right to control over Tune belonged to Bales Environmental. The right to control over Sheldon belonged to Chill Boats, IPS, or Florida Marine.

To the extent BP did not have the right to control over the crewmembers, actual control also fails. Michael Bales' testimony repeatedly states an amalgamation of companies oversaw the DECON-1.[19] It appears no single company had complete control over the DECON-1, and orders came from a variety of authorities.[20]

Chill Boats argues the complexity creates a genuine issue of fact as to who controlled whom. Chill Boats cites to two cases that held the issue of borrowed employee status is a matter of law, "but some cases involve factual disputes and require findings by a fact-finder." *Billizon*

---

[18] (1) Who has control over the employee and the work he is performing, beyond mere suggestion of details or cooperation; (2) whose work was being performed; (3) was there an agreement, understanding, or meeting of the minds between the original and the borrowing employer; (4) did the employee acquiesce in the new work situation; (5) did the original employer terminate his relationship with the employee; (6) who furnished tools and place for performance; (7) was the new employment over a considerable length of time; (8) who had the right to discharge the employee; and, (9) who had the obligation to pay the employee.
[19] Bales Dep. 27:1-8, 44:23-25.
[20] *Id.* at 46:8.

10

*v. Conoco, Inc.*, 993 F.2d 104, 105 (5th Cir. 1993); *see Brown*, 984 F.2d at 677.

In *Brown*, the parties "presented conflicting testimony regarding who instructed Brown [the employee]." *Brown*, 984 F.2d at 677. Brown stated he was instructed by a supervisor named Gulf Island, and a supervisor from another company, Union, stated he also gave Brown instructions. *Id.* at 677. These conflicting statements created a genuine issue of fact as to who instructed and controlled Brown. Here, there is no conflicting testimony as to who instructed whom. Sheldon states his night run order came from Tune. His statement is unlike the factual dispute in *Brown*. The record here similarly does not provide a specific occasion where BP instructed Tune or Sheldon. In fact, from Tune's testimony it would appear he did not confer with anyone regarding Sheldon's night run.[21]

Furthermore, the evidence does not show BP controlled Tune and Sheldon when considering their entire scope of employment. BP oversaw the clean up operations from the "Houma Command Center," along with O'Brien's, the U.S. Coast Guard, and other entities. The Houma Command Center had supervisory authority over the DECON-1 barge. Chill Boats argues this suggests BP had control over Tune as it

---

[21]Tune Dep. 17:7-19:11

could have ordered him from the Houma Command Center. However, Tune's employer, Bales Environmental, testimony states BP could have, but generally never would, order Tune.[22] Moreover, Michael Bales stated it is unknown who gave orders from the Houma Command Center at any given time.[23] When asked if a particular company managed the center Michael Bales answered "don't know."[24] And when asked who the principal was at the center, he "would assume it's BP," but acknowledged "I can't answer."[25] An assumption alone is not sufficient at the summary judgment stage to force the matter to proceed to trial. Chill Boats and Lejeune must provide supporting evidence to confirm the assumption to make trial appropriate. *See, e.g.*, *Sigur v. Emerson Process Mgmt.*, 492 F. Supp. 2d 565, 569 (M.D. La. 2007). They have failed to do so.

> We resolve factual controversies in favor of the nonmoving party, but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts. We do not, however, in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts.

*Little*, 37 F.3d at 1075. Here, there is an absence of proof. Of the individuals deposed, it appears Michael Bales is the most knowledgeable regarding the chain of command at

---

[22]Bales Dep. 75:21-25.
[23]Id. at 77:8-19.
[24]Id. at 15:14-19.
[25]Id. at 79:12-16.

the Houma Command Center. However, his statements above do not create a genuine issue of material fact.[26] He explicitly states he "do[esn't] know" who gave orders from the center at any particular time.[27]

No BP representative with supervisory authority on the night of the alleged accident is identified in the record. The record does not offer evidence that would: one, explain the nature of Tune's relationship with BP; or two, give credence to the assertion that BP had control over Tune. Moreover, the evidence does not show that the noncontractual relationship was so controlling that it overcomes the presumption that the contractual employer had control over the employee. *See, e.g.*, *Brown*, 984 F.2d at 679; *LeBlanc v. AEP Elmwood LLC*, 946 F.Supp.2d 546, 552 (E.D. La. 2013).

Chill Boats asserts BP might have given Tune permission to order Sheldon's night run. However, there is no evidence BP ordered Tune the night of Lejeune's incident. Chill Boats' assertion is speculative. Its assertion implies that Tune first checked with a supervisor before permitting the night run, and the theoretical

---

[26] In fact, the most recent depositions, submitted with the more recently filed motion for summary judgment, suggest Tune did not receive any orders from the center regarding Lejeune's transportation. He would generally have orders disseminate from Michael Bales. See Tune Dep. 62:11-64:19.

[27] Tune Dep. 77:8-21.

13

supervisor was a BP employee. No deposition testimony states Tune conferred with another individual. Extrapolations like these are not sufficient to require trial—"unsubstantiated assertions, improbable inferences, and unsupported speculation" are insufficient to defeat a motion for summary judgment. *Brown v. City of Hous.*, 337 F.3d 539, 541 (5th Cir. 2003); *see also Little*, 37 F.3d at 1075. Accordingly, the Court finds the deposition testimony does not create a genuine issue of material fact as to whether BP ordered the night run or gave Tune permission to order the run, and Chill Boats' supposition to the contrary is rejected.

The deposition testimonies do not show BP had control over Tune or Sheldon the night of Lejeune's injury or in general. No testimony provides a specific example where BP instructed Tune or Sheldon, and thus the evidence does not create a genuine dispute of material fact.

Even though the control test appears decisive, the Court has considered the other borrowed servant factors. *See Brown v. Union Oil Co. of Ca.*, 984 F.2d 674, 676 n.12 (5th Cir. 1993). Only one factor supports BP's involvement, which is that, ultimately, BP's work was being performed, i.e. the cleanup of the BP spill. However, the other factors are more attributable to an intermediary other than

BP. The control test and other factors weigh against borrowed employee status, and like in *Brown*, "the remaining factors do not overwhelmingly" show that Tune or Sheldon were borrowed employees. *Brown v. Union Oil Co. of Ca.*, 984 F.2d at 678.

In sum, the evidence regarding the important borrowed servant questions (such as who had contractual and actual control over the crew) point to an intermediary other than BP. Chill Boats' does not offer specific evidence of BP's control. The same conclusion, that BP is not a borrowing employer, is reached when considering the supporting factors. Accordingly, there is no evidence that Tune or Sheldon were BP's borrowed employees.

**Issue 2 – Vessel Unseaworthiness**

Lejeune claims BP, or others, failed to provide him with a seaworthy vessel to transport him to shore. He claims the Hydra-Sport was unseaworthy as its collapsible chair was not properly equipped with a safety harness or restraint. Seaworthiness is a non-delegable duty that extends only to the owner of a vessel. 46 U.S.C.A. § 30505; *see, e.g.*, *In Re Signal Int'l, LLC*, 579 F.3d 478, 498 (5th Cir. 2009) (holding a vessel owner has an absolute nondelegable duty to provide a seaworthy vessel). Here, BP did not own, charter, or lease the Hydra-Sport. Thus BP

15

cannot be held liable for the vessel's alleged unseaworthiness because that duty belongs solely to the vessel's owner.

For the reasons enumerated above, BP's Motion for Summary Judgment[28] is **GRANTED**.

New Orleans, Louisiana, this 18th day of July, 2014.

_____
UNITED STATES DISTRICT JUDGE

---

[28] Rec. Doc. No. 96