**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **TIMOTHY LEJEUNE** | **CIVIL ACTION** |
| **VERSUS** | **NO. 11-2482** |
| **PRODUCTION SERVICES NETWORK U.S., INC., ET AL.** | **SECTION "B"(5)** |

## ORDER AND REASONS

### I.  NATURE OF THE MOTIONS AND RELIEF SOUGHT

Before the Court are five (5) motions:

1. Motion to Dismiss for Failure to State a Claim by Defendant, Bales Environmental Consulting & Management, LLC.[1] Defendant, O'Brien's Response Management LLC filed an opposition in response.[2] Accordingly, and for the reasons enumerated below, **IT IS ORDERED** that the Motion to Dismiss (Rec. Doc. No. 139) be **GRANTED.**

2. Motion to Strike by Bales Environmental Consulting & MeManagement, LLC.[3] Defendant, Chill Boats, LLC, filed a response in opposition.[4]  Bales has filed a supplemental memorandum in reply.[5] Accordingly, and for the reasons enumerate below, **IT IS ORDERED** that the Motion to Strike (Rec. Doc. No. 156) be hereby **DISMISSED** as **MOOT** without prejudice to re-urge.

---

[1] Rec. Doc. No. 139.
[2] Rec. Doc. No. 148.
[3] Rec. Doc. No. 156.
[4] Rec. Doc. No. 159.
[5] Rec. Doc. No. 184.

3. Motion for Summary Judgment by Florida Marine, LLC.[6] The motion is unopposed. Accordingly, and for the reasons enumerated below, **IT IS ORDERED** that the Motion (Rec. Doc. No. 172) be **GRANTED.**

4. Motion for Summary Judgment by O'Brien's Response Management, LLC.[7] Chill Boats, LLC, filed a response in opposition.[8] Plaintiff filed an opposition adopting the response.[9] **IT IS ORDERED** that the Motion (Rec. Doc. No. 168) be **DENIED.**

5. Motion for Summary Judgment by Bales Environmental Consulting & Management, LLC.[10] Chill Boats, LLC filed a response.[11] Plaintiff filed an opposition adopting the response.[12] **IT IS ORDERED** that the Motion (Rec. Doc. No. 173) be **DENIED.**

## II.  FACTS OF THE CASE AND PROCEDURAL HISTORY

This case arises out of an accident that occurred during the 2010 BP oil spill cleanup. Plaintiff, Timothy Lejeune ("Lejeune" or "Plaintiff"), brings this suit under the Jones

---

[6] Rec. Doc. No. 172.
[7] Rec. Doc. No. 168.
[8] Rec. Doc. No. 170.
[9] Rec. Doc. No. 175.
[10] Rec. Doc. No. 173.
[11] Rec. Doc. No. 174.
[12] Rec. Doc. No. 176.

Act, 46 U.S.C. § 688, *et seq.*, and Admiralty and General Maritime Law, 28 U.S.C. § 1333, *et seq.*[13]

On or about October 4, 2010, Lejeune was employed by a subsidiary of Production Services Network U.S., Inc. ("PSN") as a paramedic, assigned to work aboard the DECON 1 barge.[14] Lejeune was injured aboard a Hydra-Sport 30 vessel while transporting him from the barge to shore.[15] The vessel was chartered and operated by Chill Boats, who employed Captain Brennon Sheldon ("Sheldon").[16] Sheldon purportedly received an order from the vessel's Barge Engineer, Brandon Tune ("Tune") to make the run, bringing Lejeune back to dock.[17] Tune was hired by Michael Bales ("Mike Bales") as supervisor aboard the vessel. Sheldon elected to navigate without the use of lights and relied on radar and other electronic equipment to guide him.[18] The vessel hit a wake, and the impact allegedly threw Lejeune from his seat, resulting in injuries to his neck and shoulder.[19]

Lejeune claims he was injured due to the operational negligence of the crew of said vessel and/or unseaworthiness of said vessel and its equipment and appurtenances.[20] Lejeune filed

---

[13] Rec. Doc. No. 1, 103.
[14] Rec. Doc. No. 103 at 2-3.
[15] Rec. Doc. No. 103 at 4. The vessel  was owned by Consulting & Trust, Inc.
[16] Rec. Doc. No. 103 at 3.
[17] Rec. Doc. No. 103 at 4.
[18] Rec. Doc. No. 103 at 4.
[19] Rec. Doc. No. 103 at 4.
[20] Rec. Doc. No. 103 at 5.

suit, naming as Defendants: Production Services Network U.S., Inc. ("PSN"); BP America Inc. and BP Products North America, Inc. ("BP"); Chill Boats, LLC ("Chill Boats"), Integrated Pro Services, LLC ("IPS"); Joe Cataloni ("Cataloni"); Florida Marine, LLC ("Florida Marine")[21]; Bales Environmental Consulting & Management, LLC ("Bales"); and, O'Brien's Response Management, LLC ("O'Brien's").[22] Lejeune seeks recovery for past lost wages; future earning capacity; past and future pain and suffering, mental and emotional distress, loss of enjoyment of life; maintenance and cure benefits and punitive damages for failure to pay the same.[23]

In the Second Amended Complaint, Lejeune contends that the vessel, owned by Cataloni, was contracted out to Chill Boats, IPS, BP, Bales and/or Florida Marine and captained by Brennon Sheldon.[24]

On Plaintiff's motion, the Court dismissed Cataloni as a party to this action.[25] The Court granted PSN's unopposed Motion for Summary Judgment.[26] The Court granted BP's Motion for Summary Judgment.[27] Plaintiff and Chill Boats reached a settlement, and

---

[21] Second Amended Complaint, Rec. Doc. No. 123.
[22] Rec. Doc. No. 103 at 1-2.
[23] Rec. Doc. No. 103 at 8-9.
[24] Rec. Doc. No. 123 at 3.
[25] Rec. Doc. No. 14, 16.
[26] Rec. Doc. No. 32, 33.
[27] Rec. Doc. No. 155.

the claims against Chill Boats were dismissed.[28] There remain various cross-claims in this case.

## III.  LAW AND ANALYSIS

A. *Fed. R. Civ. P. 12(b)(6) Motion to Dismiss by Bales*

Defendant in Cross-Claim,[29] Bales, moves to dismiss the claims of O'Brien's for indemnity and attorney fees on the grounds that O'Brien's fails to state a claim as a matter of law.[30] O'Brien's cross-claims against Bales to recover, in the event O'Brien's is held liable for the conduct of Tune, the vessel's Barge Engineer, and the individual who gave the order that the trip be taken.[31] Tune was employed by Bales, and was in turn contracted to O'Brien's.[32]

Under Federal Rule of Civil Procedure 12(b)(6) "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Walker v. South Central Bell Telephone Co.*, 904 F.2d 275, 276 (5th Cir. 1990)(*quoting Conley v. Gibson*, 355 U.S. 41,

---

[28] Rec. Doc. No. 192, 194.

[29] Chill Boats filed a Third Party Complaint against O'Brien's. (Rec. Doc. No. 47). O'Brien's filed a cross-claim against Chill Boats, Rec. Doc. No. 53, and cross-claims against Bales, Florida Marine, IPS and Cataloni. Rec. Doc. No. 129. The Third Party Complaint by Chill Boats and O'Brien's cross-claim against Chill Boats have since been dismissed. (Rec. Doc. No. 195, 197). The Court addresses the instant Motion on the claims asserted by Plaintiff.

[30] Rec. Doc. No. 139.

[31] Rec. Doc. No. 129 at 7-8.  Captain Brennan Sheldon and deckhand Eric Adams, the only other two persons other than Plaintiff aboard the vessel were employed by Chill Boats, which has since reached a settlement with Plaintiff. (Rec. Doc. No. 194).

[32] Rec. Doc. No. 148.

45-46 (1957)). Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal,* 129 S.Ct. 1937, 1949 (*citing Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955 (2007)).

Bales argues the cross-claim states no claim for indemnity and attorney fees because (1) the limited availability of common law tort indemnity under maritime law does not apply here; and, (2) absent a statute or enforceable contract, litigants must pay their own attorney fees in maritime disputes.[33] O'Brien's responds that "if Brandon Tune was negligent, and if his negligence was the proximate cause of Mr. Lejeune's claimed injury, O'Brien's is entitled to recovery over or indemnity from Bales Environmental because of a breach of the implied warranty of workmanlike performance by Bales Environmental in its contractual relationship with O'Brien's."[34]

O'Brien's fails to state a cognizable claim for indemnity on a breach of contractual warranty theory because in this context, O'Brien's is not a vessel owner and the doctrine upon which it relies, does not apply. "Under the *Ryan* doctrine stevedores and other shore-based contractors who go aboard a vessel by the owner's arrangement or by his consent to perform service for the ship's benefit, impliedly warrant to the ship

---

[33] Rec. Doc. No. 139-1 at 3-4, 5
[34] Rec. Doc. No. 148 at 3.

owner that they will accomplish their task in a workmanlike manner." *Parfait v. Jahncke Service, Inc.*, 484 F.2d 296, 301 (5th Cir. 1973)(*citing Ryan Stevedoring Company v. Pan-Atlantic Steamship Corporation*, 350 U.S. 124 (1956)).[35] The breach thereof entitles the vessel to indemnity where the vessel is subjected to absolute liability.... *Ryan*, 350 U.S. at 133.

Indemnity was felt necessary to relieve the vessel of onerous liability for an unseaworthy condition that arose "when the shipowner...relinquished control of his vessel...to another party...who was better situated to prevent losses." *Hobart v. Sohio Petroleum Co.*, 445 F.2d 435, 438 (5th Cir), *cert. denied*, 404 U.S. 942 (1971)(*citing Ryan*, 350 U.S. 124)). The admiralty law recognizes that the "obligor in a service contract has a duty to perform his or her task with reasonable care, skill, and diligence." *St. James Stevedoring Partners, LLC v. Motion Navigation Ltd.*, Civil Action No. 13-541, 2014 WL3892178, at *16 (E.D. La. August 6, 2014)(citing T. Shoenbaum, 1 *Admiralty and General Maritime Law* § 5-8 at 190 (2d ed. 1994)); *B&B Schiffahrts GmbH & Co. v. American Diesel & Ship Repairs, Inc*. 136 F.Supp. 2d 590, 597 (E.D. La. 2001).

---

[35] In *Ryan*, a longshoreman was injured by shifting cargo improperly stowed by a stevedore. The longshoreman sued the vessel owner for breach of the vessel's absolute and non-delegable duty to provide a seaworthy vessel. The Supreme Court held that the vessel was entitled to indemnity from the stevedore because the stevedore breached a warranty of workmanlike performance ("WWLP") implicit in its contract with vessel which thereby subjected the vessel to absolute liability under the seaworthiness doctrine. 350 U.S. at 133.

However, the Fifth Circuit has been reluctant to expand the *Ryan* doctrine beyond its facts. *Bass v. Phoenix Seadrill/78, Ltd.*, 749 F.2d 1154, 1167 (5th Cir. 1985). The Fifth Circuit has observed that a *shipowner/plaintiff* has a maritime cause of action...on the theory that the defendant breached its warranty of workmanlike service. *Kevin Gros Offshore, LLC v. Max Welders*, Inc., Civil Action No. 07-7340, 2009 WL 152134, at *4 (E.D. La. January 22, 2009)(emphasis added).

In *Max Welders*, this Court noted: "there is some support for the notion that the doctrine of implied warranty of workmanlike performance is on the verge of judicial extinction. *Id*. Indeed the Fifth Circuit has described the doctrine as 'withered' and has refused to extend the doctrine beyond those controversies involving the special rules governing the obligation and liability of *shipowners* which necessitated its formulation. *Id*. (internal quotes omitted)(citing *Nathaniel Shipping, Inc. v. General Electric Co.,* 920 F.2d 1264 (5th Cir. 1991)); *see also Lekelt v. Superior Oil Co.*, 608 F.2d 592, 593 (5th Cir. 1979); *Coffman v. Hawkins & Hawkins Drilling Co.*, Inc., 594 F.2d 152, 154 (5th Cir. 1979)(granting barge owner indemnity for the amount paid in settlement of the claim of an injured employee upon finding that contractor breached its warranty of workmanlike performance); *Parfait v. Jahncke*

*Service*, 347, F.Supp. 485 (E.D. La. 1972), *aff'd in part, rev'd in part*, 484 F.2d 296 (5th Cir. 1973), *cert. denied*, 415 U.S. 957 (1974)(finding vessel owner was entitled to indemnity on a theory that contractor's employer breached its implied warranty of workmanlike performance); *cf.* (*M & O Marine, Inc. v. Marquette Co.*, 730 F.2d 133, 135 (3rd Cir. 1984).

The Court concludes that, because O'Brien's is not a vessel owner here, O'Brien's fails to state a claim for indemnity for breach of warranty of workmanlike performance, and does not arrive at the issue of attorney fees. For these reasons, **IT IS ORDERED** that the 12(b)(6) Motion to Dismiss for Failure to State a Claim be **GRANTED**, and that O'Brien's cross-claims against Bales for indemnity and attorney fees be **DISMISSED WITH PREJUDICE**.

B. *Fed. R. Civ. P. 12(f) Motion to Strike by Bales*

Defendant, Bales moves the Court to strike the depositions of Brennan Sheldon, Todd Bethelot, and Timothy LeJeune, submitted as Exhibits A, C and G in support of Chill Boats' Motion for Summary Judgment, on the ground that Bales was not present and represented at those depositions, and did not have a reasonable notice of the depositions.[36] The Court has granted Chill Boats' Motion to Withdraw the Motion for Summary Judgment,

---

[36] Rec. Doc. No. 156.

and the Motion for Summary Judgment has been dismissed without prejudice.[37] Therefore, **IT IS ORDERED** that the Motion to Strike be hereby **DISMISSED** as **MOOT** without prejudice to re-urge.

C. *Motions for Summary Judgment*

Summary judgment is appropriate when the record discloses that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Holden v. U.S. United Ocean Services, LLC*, 582 Fed.App'x 271, 272 (5th Cir. 2014)(quotations omitted). Any reasonable inferences are to be drawn in favor of the non-moving party. *First Am. Transp. Title Ins. Co.*, 585 F.3d 833, 837 (5th Cir. 2009)(*citing Robinson v. Orient Marine co., Ltd.,* 505 F.3d 364, 366 (5th Cir. 2007)).

1. Motion for Summary Judgment by Florida Marine

Florida Marine moves the Court for summary judgment, on the grounds that there are no genuine issues of material fact at issue in this case and that Florida Marine bears no liability to Plaintiff or cross-claimant, O'Brien's.[38]

In the Second Amended Complaint, Plaintiff contends that:

> Upon information and belief, defendants, Florida Marine, BP, Chill Boats, IPS, O'Brien and Bales and

---

[37] Rec. Doc. No. 188, Rec. Doc. No. 153, Rec. Doc. No. 189.
[38] Rec. Doc. No. 172.

their respective crews failed to insure that the vessel, work area, and/or equipment was safe, effective, seaworthy, and in proper working manner.[39]

Florida Marine's details its involvement in this matter as follows:

> In late May or early June, BP requested that Florida Marine locate response vessels measuring between 30' and 45' with a minimum speed of 20 knots to be used as needed in response to the oil spill. In response to this request, Florida Marine then contacted IPS, who located the various vessels that would be used, including...the Hydra-Sport. These response vessels, including the Hydra-Sport were time-chartered to Florida Marine from IPS on a fully found basis. The Hydra-Sport was chartered by IPS from Chill Boats, LLC.[40]

Further:

> With respect to all vessels chartered by Florida Marine to BP, Florida Marine did not take control or possession of any vessels or crew. The owners of the vessels always agreed to retain full possession and control over the vessel and its crew and that they would provide a seaworthy vessel for the intended task.[41]

> At all relevant times to this litigation, IPS contractually agreed to supply the captain and crew for the Hydra-Sport. At no time did Florida Marine, LLC or any of its affiliated companies operate, control or maintain the Hydro-Sport. The crew of the Hydra-Sport was arranged for employment through IPS. At no time did Florida Marine employ or otherwise arrange for or hire the crewmembers which manned the Hydro-Sport.[42] Florida Marine did not employ any of the individuals...did not train or supervise any of the

---

[39] Rec. Doc. No. 123 at 5.

[40] Rec. Doc. No. 172-1 at 2; 172-10 at 1-4, Vessel Charter Agreement between Integrated Pro Services, LLC and Chill Boats, LLC.

[41] Rec. Doc. No. 172-5 at 2, Blake A. Boyd Affidavit.

[42] Rec. Doc. No. 172-5 at 3-4, Blake A. Boyd Affidavit.

employees...was   not   responsible   for   payment   to
employees.[43]

The  instant  motion  was  set  for  submission  on  September  17,
2014.  Plaintiff  has  not  filed  an  opposition.  On  the  summary
judgment  record  before  it,  the  Court  concludes  that  there  are  no
genuine  issues  of  material  fact  and  Florida  Marine  cannot  be
liable  to  Lejeune  for  vessel  unseaworthiness,  or  vicariously
under  either  a  theory  of  *respondeat*  *superior*  or  the  borrowed
servant  doctrine.

**Crewmember   Negligence:   Vicarious   Liability.**  While  an
employer  can  be  vicariously  liable  for  its  employee's  tortious
conduct  through  the  doctrine  of  *respondeat*  *superior*  under  the
Jones  Act,  *Beech  v.  Hercules  Drilling  Co.,  LLC.*,  691  F.3d  566,
571  (5th  Cir.  2001),  it  must  first  be  established  that  the
principal   is   an   employer   of   the   employee   tortfeasor.
*Cosmopolitan  Shipping  Co.  v.  McAllister*,  337  U.S.  783,  790
(1940).  The  "right"  to  control  is  the  essence  of  the  employer-
employee  relationship,  the  primary  factors  that  define  an
employer's  right  to  control  are:  selection  and  engagement;
payment  of  wages;  power  of  dismissal;  and  power  of  supervision
and  control*.  Corsair  v.  Stapp  Towing  Co.,  Inc.*,  228  F.  Supp.  2d
795,  798  (S.D.  Tex.  2002).  Control  centers  around  the  amount  of

---

[43] Rec. Doc. No. 172-5 at 3-4, Blake A. Boyd Affidavit.

control "exercised over the details of the work." *Id.* at 798. Once the relationship is established, vicarious liability may apply to employees working for their employer in the scope of their employment. *See* 46 U.S.C.A. § 30104.

Florida Marine did not have the right to control Michael Bales, Tune, or Sheldon. Michael Bales was employed by Bales Environmental; he was contracted to and paid by O'Brien's.[44] Bales Environmental paid Tune and was his employer; Bales then subcontracted Tune to O'Brien's.[45] Tune stated he could be terminated by either Bales or O'Brien's.[46] Sheldon and his deckhand were Chill Boats employees and were subcontracted to IPS. Florida Marine did not directly pay any of the aforementioned individuals. Florida Marine did not participate in their hiring, and no deposition testimony states Florida Marine had the right to terminate any of the crewmembers. Lastly, the MSA between Florida Marine and IPS support Florida Marine's contentions that Florida Marine did not hire, train, supervise any of the employees aboard the vessel at all relevant times.[47]

---

[44] Rec. Doc. No. 172 at 5-6, Exhibit 4, Michael Bales deposition.
[45] Rec. Doc. No. 172 at 7-8, Exhibit 4, Michael Bales deposition.
[46] Rec. Doc. No. 155 at 5-6; Rec. Doc. No. 168-6, Exhibit 5, Brandon Tune deposition.
[47] Rec. Doc. No. 172-7 at 6, Exhibit 1-B.

    3.03     Subcharterer shall man the Vessel at all times with a full complement of officers….
    3.05     Subcharterer shall supervise its personnel so as to ensure prompt and efficient completion of the Work and strict discipline….
    3.06     Subcharterer shall be responsible for the transportation of its personnel….

**Crewmember Negligence: Borrowed Servant Doctrine.** An employee of a general employer may become a borrowed servant of another and "[r]espondeat superior liability is assigned to the borrowing employer who had control over the act in question." *Starnes v. United States*, 139 F.3d 540, 542 (5th Cir. 1998). Although the right to control is not dispositive, it is the central issue to determining borrowed employee status. *See Ruiz,* 413 F.2d at 313 (citing *Standard Oil Co. v. Anderson*, 212 U.S. 215, 222 (1909)). If the control analysis is unhelpful, other supporting factors may be considered. *Id.* at 313; *Brown v. Union Oil Co. of Ca.*, 984 F.2d 674, 676 (5th Cir. 1993).

Beginning with the control analysis, the deposition testimony shows Florida Marine did not have the right to control over Tune or Sheldon. The right to control over Tune belonged to Bales or O'Brien's. The right to control over Sheldon belonged to Chill Boats or IPS. No Florida Marine employee or representative with supervisory authority is identified in the record. When considering its role, the evidence does not show Florida Marine controlled Tune and Sheldon; Florida Marine simply contracted the vessel on behalf of BP through IPS. In sum, the evidence regarding the important borrowed servant questions (such as who had contractual and actual control over the crew) point to an intermediary other than Florida Marine.

---

3.07    Subcharterer shall be solely responsible for the payment of labor employed....

Plaintiff has acknowledged that he lacks documentary or other evidence in support of the allegations against Florida Marine, and has not filed an opposition to the instant motion.[48]

**Vessel Unseaworthiness.** Lejeune claims Florida Marine, or others, failed to provide him with a seaworthy vessel to transport him to shore. He claims the Hydra-Sport was unseaworthy as its collapsible chair was not properly equipped with a safety harness or restraint. Seaworthiness is a non-delegable duty that extends only to the owner of a vessel. 46 U.S.C.A. § 30505; *see, e.g.*, *In Re Signal Int'l, LLC*, 579 F.3d 478, 498 (5th Cir. 2009) (holding a vessel owner has an absolute non-delegable duty to provide a seaworthy vessel). Here, Florida Marine did not own, charter, or lease the Hydra-Sport. It is undisputed that the vessel was owned by Consulting & Trust, Inc. It is undisputed that Chill Boats chartered the vessel under an assumed agreement with Consulting & Trust. Florida Marine cannot be held liable for the vessel's alleged unseaworthiness.

The Court, having considered the complaint, the record, the applicable law and the failure of any party to file a direct opposition to the instant motion, **IT IS ORDERED** that the Unopposed Motion for Summary Judgment be **GRANTED** and that

---

[48] Rec. Doc. No. 172-11 at 9-10, Plaintiff's Answers to Florida Marine, LLC's Interrogatories and Requests for Production.

Plaintiff's and Cross-Claimant O'Brien's claims arising out of the October 4, 2010 incident be **DISMISSED WITH PREJUDICE**.

2. Motions for Summary Judgment by O'Brien's and Bales

O'Brien's moves the Court for summary judgment on the basis that it cannot be held liable for the alleged conduct of Tune for the following reasons: (1) Tune did not order Captain Sheldon to take Lejeune back to shore; (2) if such an order was given, the order itself is not the legal cause of Lejeune's injury; (3) Chill Boats owed a high degree of care to its passenger; and, (4) Chill Boats is liable under a *respondeat* theory for the negligence of its employee Captain Sheldon.[49]

Bales moves the Court for summary judgment on substantially the same basis: Plaintiff and/or Chill Boats cannot establish that the disputed order by Tune to Captain Sheldon was a legal cause of Plaintiff's injury.[50] Bales argues that the legal cause of Lejeune's injuries was the collapse of the seat.[51] As the allegations involving O'Brien's and Bales are the same, and the arguments in support of summary judgment run parallel, the Court addresses the motions for summary judgment simultaneously.

Chill Boats and Plaintiff argue there exists a genuine issue of material fact as to whether Brandon Tune ordered the

---

[49] Rec. Doc. No. 168.
[50] Rec. Doc. No. 173 at 2.
[51] Rec. Doc. No. 173 at 2.

night run, as well as "why and how the accident occurred."[52] The Court agrees.

Defendants construe the deposition testimony to support a finding that Tune did not order the dispatch. According to Tune, when Lejeune made the request, Tune informed Lejeune that Lejeune would have to ask the boat captain (Sheldon).[53] The deposition testimony of the deckhand aboard the vessel, Eric John Adams appears consistent:

> And I don't want to say that Brandon, our supervisor...made us go, but I want to say he made it to where it was a choice for us...I don't specially recall him really playing any part...I don't think Brandon really—Brandon Tune had too much say-so in it but we went ahead and took Mr. Lejeune in...Mr. Lejeune was the one that came and approached us.[54]

Plaintiff appears to lack knowledge as to whether an order was given by Tune.[55] The deposition testimony of Sheldon is as follows: "I told him...go talk to Brandon. So [Lejeune] went to go talk to Brandon. That's when Brandon came upstairs, told us we need to go now".[56] Therefore, whether Tune gave a dispatch order is a disputed issue of fact. However, the materiality of this disputed fact turns on whether, assuming an order was

---

[52] Rec. Doc. No. 170 at 2-3.
[53] Rec. Doc. No. 168-7 at 38, Exhibit C-1, Tune Deposition.
[54] Rec. Doc. No. 168-12 at 18-20, Exhibit E, Adams Deposition.
[55] Rec. Doc. No. 168-3 at 15-17, Exhibit A; Exhibit B at 89 ("I can only assume. I mean, I wasn't there when [Tune] did anything"), Lejeune Deposition.
[56] Rec. Doc. No. 168-12 at 54, 59 Exhibit F, Sheldon Deposition.
> Q. All right. You indicated he told you not only no, but that you've got to bring him now?
> A. Yea. He's my boss. If I didn't run, he could have got another captain out there to run it.

given, the order itself could constitute a legal cause of Lejeune's injuries.

To establish a cause of action based on negligence, the plaintiff must establish that the defendant breached a duty of care, proximately causing the plaintiff's injuries. *Lloyd's Leasing Ltd. v. Conoco*, 868 F.2d 1447, 1449 (5th Cir. 1989).

Under the general maritime law, a party's negligence is actionable only if it is a "legal cause" of the plaintiff's injuries. *See Chavez v. Noble Drilling Corp.*, 567 Fm.2d 287, 289 (5th Cir. 1978). "Legal cause is something more than 'but for' causation, and the negligence must be a 'substantial factor' in the injury." *Thomas v. Express Boat Co.*, 759 F.2d 444, 448 (5th Cir. 1985)(citations omitted). The term "substantial factor" means more than "but for the negligence, the harm would not have resulted." *Spinks v. Chevron Oil Co.*, 507 F.2d 216, 223 (5th Cir. 1975); *see also Chisolm v. Sabine Towing & Transp. Co.*, 679 F.2d 60, 63 (5th Cir. 1982).

The legal cause of Plaintiff's injuries is unclear. Defendants argue Plaintiff suffered his injuries as a result of the vessel's "collapsed seat." Defendants point to the deposition testimony of Sheldon. However, Sheldon's deposition testimony appears to clarify that the seat where Plaintiff sat

did not break, but rather, simply folded back.[57] Defendants argue
Chill Boats is liable for Sheldon's negligence; however, this is
a disputed issue of both fact and law. While Plaintiff claims
"we hit the wake. I went airborne,"[58] according to Sheldon, the
boat did not hit a wake or wave; Sheldon properly maneuvered the
wave.[59]

Chill Boats and Plaintiff rely on Fifth Circuit case
authority to argue that, Tune had final authority aboard the
vessel to which Sheldon acquiesced, and in dispatching the night
run, Tune failed to follow strict safety protocol, thus
subjecting Bales and/or O'Brien's to liability for Tune's
negligent dispatch.[60]

The Fifth Circuit has recognized that a master has a duty
to make an independent assessment of the proper course of
action. *Boudoin v. J. Ray McDermott & Co.*, 281 F.2d 81 (5th Cir.
1960). Normally the master of a ship has the final say so in
deciding what risks posed by the weather and the condition of
his ship will be assumed. *Brown v. Link Belt Division of FMC
Corp.* 666 F.2d 110, 113 (5th Cir. 1982).

---

[57] Rec. Doc. No. 168-12 at 79-81, Exhibit F, F-1, Sheldon deposition.
[58] Rec. Doc. No. 168-3 at 21, Exhibit A, Lejeune deposition.
[59] Rec. Doc. No. 168-12 at 77-78, Exhibit F, Sheldon deposition.
[60] Rec. Doc. No. 174 at 5.

However, "when an owner or person who has primary responsibility for the task being done is in as good a position as the master to assess the difficulty of the task, the reasons for according power and responsibility to the master diminish." *Id.* (*citing Spencer v. Kellogg & Sons, Inc. v. Hicks*, 285 U.S. 502, 511-12 (1932)).

In addition to contending that Tune did not issue a dispatch order, O'Brien's also argues that "making that trip was Captain Sheldon's decision," and that "Tune did not participate in any decision regarding MR. SCOTTY departing."[61] According to Sheldon's (the master) deposition testimony, he spoke with Tune prior to departure, and informed Tune that he did not want to make the run because of the weather conditions and because Sheldon had been making runs all day; however, "as the barge supervisor, [Tune] told me I had to go."[62] According to Plaintiff, Sheldon and the deckhand did complain about being tired from making runs all day, as well as the darkness.[63]

In sum, on the summary judgment record, the Court cannot conclude that Bales and/or O'Brien's are entitled to summary judgment. If a dispatch order was issued by Tune, and Tune had supervisory authority, Tune cannot be absolved from liability.

---

[61] Rec.. Doc. No. 168-1 at 4.
[62] Rec. Doc. No. 168-12 at 60-61.
[63] Rec. Doc. No. 168-3 at 17, Exhibit A, Lejeune deposition.

It is unclear whether Plaintiff's accident and injuries resulted from the vessel's "collapsed seat," Sheldon's negligence, the weather conditions, Plaintiff's own negligence, or a combination of factors. Where more than one party is at fault, the comparative negligence standard applies. Therefore, to the extent that the disputed order by Tune overrode Sheldon's weather condition concerns, and those weather conditions were at least one substantial factor in causing the accident, Defendants cannot be absolved entirely from liability.

Accordingly, and for the reasons enumerated above, **IT IS ORDERED** that the Motions for Summary Judgment be **DENIED.**

## IV.   CONCLUSION

Accordingly, and for the reasons enumerated above,

1. **IT IS ORDERED** that the Motion to Dismiss (Rec. Doc. No. 139) by Bales Environmental Consulting & Management, LLC be **GRANTED.**

2. **IT IS ORDERED** that the Motion to Strike (Rec. Doc. No. 156) by Bales Environmental Consulting & Management, LLC be hereby **DISMISSED** as **MOOT** without prejudice to re-urge.

3. **IT IS ORDERED** that the Motion for Summary Judgment by Florida Marine, LLC (Rec. Doc. No. 172) be **GRANTED.**

4. **IT IS ORDERED** that the Motion for Summary Judgment by O'Brien's Response Management, LLC be **DENIED.**

21

5. **IT IS ORDERED** that the Motion for Summary Judgment by Bales Environmental Consulting & Management, LLC be **DENIED**.

New Orleans, Louisiana, this 25th day of February, 2015.

UNITED STATES DISTRICT JUDGE